# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | FREDERICK J. KAPALA | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 50130 | **DATE** | January 10, 2013 |
| **CASE TITLE** | Antwann Green (#B-13943) vs. Wexford Health Sources, et al. | | |

**DOCKET ENTRY TEXT**

The plaintiff's motion to clarify omission of exhibits [#108] is granted. The defendants' motions to strike [document nos. 101 and 104-2] are granted. The defendants' motion to deem facts admitted [#104-1] is granted. The defendants' motions for summary judgment on grounds of non-exhaustion [document nos. 56, 60, and 71] are granted in part and denied in part. Only the plaintiff's claim that he has been denied treatment for the presence of diverticulum pockets is dismissed pursuant to 42 U.S.C. § 1997e(a). The defendants' motions for judgment on the pleadings [document nos. 40 and 26-3] are denied. Defendant Dominguez' motion to dismiss [#22] is denied. The Wexford defendants' motion to dismiss [#26-2] is granted in part and denied in part. Defendants Colgan and Wexford Health Sources, Inc., are dismissed as defendants pursuant to Fed. R. Civ. P. 12(b)(6). Wexford's motion to bifurcate [#26-1] and stay [#26-4] is denied as moot. The IDOC defendants' motion to dismiss [#75] is granted in part and denied in part. Chris Barnhardt, Nedra Chandler, Amber Allen, Michael Randle, and Jackie Miller are dismissed as defendants pursuant to Fed. R. Civ. P. 12(b)(6). Defendants Dominguez, Dahiya, and Eykamp are directed to answer or otherwise plead within twenty-one days of the date of this order.

■ **[For further details see text below.]** Docketing to mail notices.

## STATEMENT

The plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, medical professionals, and food providers at the Dixon Correctional Center, have violated the plaintiff's constitutional rights by acting with deliberate indifference to his health, safety, and medical needs. More specifically, the plaintiff alleges that he has been forced to eat an excessively soy-based diet even though it is causing severe health complications; he further contends that he has received inadequate medical care for his multiplying health complaints. This matter is before the court for ruling on pending motions.

### Defendants' Motions for Summary Judgment on Grounds of Non-Exhaustion

The defendants have moved for summary judgment due to the plaintiff's purported failure to exhaust administrative remedies prior to initiating suit. For the reasons stated in this order, the motions are granted only with respect to the plaintiff's claim that he has been denied treatment for diverticulum pockets in his colon.

The plaintiff's motion to clarify omission of exhibits in connection with the summary judgment motions is granted. The plaintiff explains that he was unable to obtain service copies of exhibits due to impediments caused by the prison law library. On this single occasion, the court has considered the plaintiff's exhibits. However, the plaintiff is once again reminded that he must provide all opposing counsel of record a complete

copy of every court filing. The plaintiff may not simply ignore this requirement if he encounters an obstacle; rather, he must file an appropriate court motion.

Furthermore, the plaintiff failed to comply with basic summary judgment filing requirements. The defendants filed statements of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motions for summary judgment, each of the defendants included a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" [document nos. 55, 63, and 74], as required by circuit precedent. Those notices explained in detail the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

Local Rule 56.1(b) (N.D. Ill.).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the plaintiff failed to file proper responses to the defendants' statements of uncontested facts. Instead, the plaintiff has responded to only a handful of the defendants' numbered statements. Given the considerations stated above, the defendants' motion to deem facts admitted is granted. The court views the defendants' Rule 56.1 statements supported by the record and not properly rebutted by the plaintiff to be true and uncontested. Moreover, the defendants' motions to strike the plaintiff's myriad arguments and exhibits that do not pertain to the issue of exhaustion are likewise granted.

## Procedural Background

The relevant facts pertaining to administrative exhaustion are as follows: In January 2010, the plaintiff filed a grievance ("Grievance #1") claiming that the predominantly soy-based diet he receives at the Dixon Correctional Center was causing him health problems. The plaintiff maintained that he had developed hypothyroidism, which he attributed to the soy diet. The plaintiff indicated that he had undergone fifteen x-rays, six blood tests, and five urinalyses, and that he had been given a fiber supplement; however, he requested a non-soy, vegan diet and also requested that a colonoscopy be performed.

The plaintiff's counselor denied the grievance. The counselor observed that there was no evidence linking soy to the plaintiff's health concerns. She additionally noted that the plaintiff's fiber intake had been increased, and that recent medical tests were negative for cancer. A grievance officer (defendant Barnhardt) similarly found that, although the plaintiff had chronic constipation, there was no evidence to suggest that soy products were the cause. Barnhardt suggested that, while soy was "safe and approved by the IDOC," the plaintiff might wish to contact the medical staff if he believed he needed a special diet. The warden concurred with the denial of the grievance.

**STATEMENT**

After the grievance was denied at the institutional level, the plaintiff appealed to the Administrative Review Board. The ARB denied the grievance, stating, "According to Agency Medical Director, current extensive medical literature does not support the claim that soy diets cause significant medical problems and certainly not at the concentrations it is being served within the IDOC."

On May 30, 2010, and June 4, 2010, the plaintiff filed grievances principally against Dr. Carter. [The grievances will be jointly referred to as "Grievance #2," as they were appealed together.] The grievances mostly related to the plaintiff's dissatisfaction with the treatment he was receiving for multiple intestinal issues, mentioning many members of the health care staff by name. The grievance was denied at all levels of review.

The plaintiff filed another grievance ("Grievance #3") in August 2011 concerning his medical care. The plaintiff complained that although a colonoscopy at the University of Illinois Hospital reflected diverticula, defendant Carter declined to take further action, writing in the plaintiff's medical records, "No reason for bowel abnormality identified." The ARB ultimately rejected the plaintiff's ensuing appeal as untimely.

## Analysis

The defendants' motions for summary judgment on the basis of non-exhaustion are largely denied. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001). The defendants bear the burden of pleading and proving failure to exhaust. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (citing *Dole, supra*, 438 F.3d at 809).

In order to satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). An inmate must comply with the rules established by the State with respect to the form, timeliness, and content of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). In the case at bar, the plaintiff completed the three-step process of grieving both his subjection to an excessively soy-based diet and the quality of his medical care. The plaintiff appealed both matters to, and received substantive decisions from, the Illinois Administrative Review Board.

Any failure on the part of the plaintiff to pursue timely appeals with respect to Grievances 1 and 2 is a non-issue. "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Conyers*, *supra*, and *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)); *see also Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Only the plaintiff's untimely, and therefore rejected, appeal of Grievance #3 precludes relief in federal court.

Additionally, neither the plaintiff's failure to name certain defendants in his grievances nor his failure to detail his specific beef against each named defendant is fatal to his claims under the circumstances of this case. "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). A major purpose of the exhaustion requirement is to give prison administrators prompt notice of problems, so that they may be corrected internally in the first instance and an administrative record developed prior to suit. *Porter, supra*, 534 U.S. at 524-25; *Smith*

**STATEMENT**

*v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001).

A prisoner need not specify by name each person against whom he addresses his grievance. *Turley v. Catchings*, No. 03 C 8491, 2004 WL 2092008, at *3 (N.D. Ill. Sep. 15, 2004) (Norgle, J.). The PLRA statute "does not require a prisoner to name each prospective defendant in his grievance, even if the prospective defendant was known to the prisoner when the grievance was written. A prisoner can 'object intelligibly to some asserted shortcoming' without naming or blaming anyone; he might, for example, simply complain to the warden that he hasn't been fed for two days." *Murray v. Artz*, No. 02 C 8407, 2002 WL 31906464, at *4 (N.D. Ill. Dec. 31, 2002) (Kennelly, J.)

The court recognizes that the Illinois Administrative Code does require inmates to provide "the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(b). Furthermore, both *Jones v. Bock*, 549 U.S. 199, 218 (2007) and *Barnes v. Briley*, 420 F.3d 673, 679 (7th Cir. 2005), addressed situations where prison rules did not require inmates to name each prospective defendant in his grievance, which is currently not the case in the Illinois prison system. But in this case, where the plaintiff is claiming a systemic problem with food safety and a broad denial of treatment by the health care unit as a whole, he will not be found at fault for failing to name each, individual defendant in his grievances.

Nevertheless, the plaintiff's claim that he was denied treatment for diverticulum pockets in his colon is dismissed for failure to exhaust remedies. Even assuming (without finding) that diverticula require medical intervention, the Administrative Review Board refused to consider the plaintiff's appeal because it was filed well outside the time frame for doing so. Because the plaintiff failed to complete the administrative grievance process in a timely manner as to Grievance #3, he is barred from pursuing relief in federal court as to that claim. *Pozo*, 286 F.3d at 1025. Consequently, that claim is summarily dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

**Defendants' Motions for Judgment on the Pleadings**

The defendants' motions for judgment on the pleadings based on the Supreme Court's recent decision in *Minneci v. Pollard*, --- U.S. ---, 132 S.Ct. 617 (2012), are denied. In *Minneci*, the Supreme Court declined to extend *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), to find an implied cause of action under the Eighth Amendment against employees of a private company that operated a federal prison facility. The Court refused to recognize the new *Bivens* claim "primarily because [the prisoner's] Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law provides an alternative, existing process capable of protecting the constitutional interests at stake." *Minneci*, 132 S.Ct. at 623 (internal quotations omitted).

The defendants argue that *Minneci* should be extended to bar a federal civil rights action against health care professionals employed by private health care corporation Wexford Health Sources, Inc., to provide prison medical care. This argument fails. *Minneci* deals solely with the question of when the judicial branch should recognize an implied cause of action under *Bivens*. *Minneci* has absolutely no bearing on Section 1983 cases, where Congress has already created a cause of action.

The Supreme Court has long recognized that private physicians and nurses who contract with the State to provide medical care to prisoners act "under color of law" for purposes of § 1983. *See, e.g., West v. Atkins*, 487 U.S. 42 (1988); *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 671 (7th Cir. 2012). The defendants' attempt to distinguish this case from *West* based on different contractual terms regarding liability and indemnification is unavailing: "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *West*, at 55–56. The Supreme Court did not, in *Minneci*, explicitly overturn a long line of established law on who may be a § 1983 defendant. *See Winchester v. Marketti*, No. 11 C 9224, 2012 WL 2076375, *2-3 (N.D. Ill. Jul. 8, 2012) (Zagel, J.). *Minneci* does not bar the plaintiff's civil rights claims.

**Defendants' Motions to Dismiss the Complaint for Failure to State a Claim**

**STATEMENT**

Turning to the defendants' motions to dismiss the complaint for failure to state a claim, it is well established that *pro se* complaints are to be liberally construed. *Kaba v. Stepp*, 458 F.3d 678, 681, 687 (7th Cir. 2006). *Pro se* submissions are held to a less stringent standard than formal pleadings drafted by lawyers. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), a plaintiff need only state his basic legal claim and provide "some indication ... of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Bell Atlantic Corp.,* 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.* at 555. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). The court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) (citations omitted) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court.").

**Facts Alleged in the Complaint**

The plaintiff is an Illinois state prisoner, confined at the Dixon Correctional Center at all times relevant to this action. Defendants Chris Barnhardt, Nedra Chandler, Amber Allen, Michael Randle, Cindy Eykamp, and Jackie Miller ("the IDOC defendants") are administrators, grievance officials, and dietary professionals at Dixon. Defendants Rajender Dahiya (sued as "Dihaya"), Ava Colgan-Valdez, Bessie Dominguez, and Wexford Health Sources, Inc. ("the Wexford defendants") are prison health care providers.

In February 2005, the plaintiff began to experience body aches, as well as pain in his stomach and lower back. The problems intensified such that by 2006, the plaintiff was suffering from severe constipation, dizzy spells, extreme fatigue, pain, and deformed finger nails. Defendant Colgan, a physician's assistant, launched a "battery" of tests, including a thyroid functioning test. The plaintiff was given Dulcolax and advised to increase his fiber intake.

In February 2007, the plaintiff met again with Colgan. He told her that his hair was falling out, that he was having difficulty remembering things, and that the Dulcolax was not relieving his constipation. Colgan prescribed Metamucil and Colace. On his own initiative, the plaintiff also modified his diet to eliminate peanut butter and peanuts, thinking that might help, but his symptoms persisted.

On January 18, 2008, the plaintiff had a consultation with defendant Dahiya, a staff physician. The plaintiff complained to Dahiya of shoulder pain, numbness in his hand, and a tingling sensation. The doctor prescribed pain medication and told the plaintiff to "lay off" the weights, even though the plaintiff was not weight-training at the time.

**STATEMENT**

     The plaintiff returned to Dahiya the next month. The plaintiff reiterated his concerns about constipation, dizziness, fatigue, sleeplessness, stress, and other troubling symptoms. Dahiya prescribed the plaintiff blood pressure medication without conducting any tests to determine whether the plaintiff, in fact, had high blood pressure.

     In May 2008, the plaintiff reported rapid, off-beat heart rhythms and difficulty catching his breath to Dahiya. Dahiya diagnosed the plaintiff with asthma, again without having performed any diagnostic examination. Dahiya prescribed asthma medication, ignoring all other symptoms.

     In August 2008, the plaintiff saw defendant Mesrobian about his medical problems; the plaintiff said that none of the medications were helping. Dr. Mesrobian ordered x-rays, which revealed a large amount of stool in the plaintiff's colon. No additional treatment was offered or implemented. The same, ineffective medications were continued. The needless asthma medication was finally stopped about a year after it had first been prescribed.

     In July 2009, Colgan administered another blood test. On the basis of the test results, Colgan told the plaintiff that he had hypothyroidism. A re-test two days later confirmed that the plaintiff had hypothryoidism; however, for some reason Colgan misinformed the plaintiff that he did not have that condition.

     An x-ray in November 2009 showed that the plaintiff had "bowel gas" and "excessive artifacts." Colgan provided the plaintiff with the supplies to self-administer an enema.

     A third hypothyroidism test in December 2009 also showed "out-of-range" results.

     In January 2010, the plaintiff advised health care providers that he had blood in his stool. A stool sample tested out of range (the record does not disclose exactly what "out of range" signifies).

     In May 2010, the plaintiff began seeing Dr. Carter. Carter prescribed Dulcolax and fiber supplements for the plaintiff's symptoms even though the same treatment had proven ineffective.

     Later that month, the plaintiff's family contacted defendant Allen, the prison's health care administrator, to complain about what they perceived to be inadequate medical care.

     In June 2010, the plaintiff learned from various articles that hypothyroidism and other health problems often arise from the consumption of soy products. The plaintiff, a vegan, had been on a diet with a high soy content for many years. When the plaintiff shared his findings with Carter, the doctor told the plaintiff that his health issues were psychosomatic. The plaintiff insisted that he had hypothyroidism, whereupon Carter told him that he would have to "learn to live with the pain, that's just how life is." Carter continued to belittle and dismiss the plaintiff's concerns about soy toxicity.

     An ultrasound in September 2010 revealed that the plaintiff was suffering from severe constipation.

     Later that year, Carter approved the plaintiff for a colonoscopy at the University of Illinois Hospital when he reported finding blood in his underwear. Carter made the plaintiff promise that if the exam came back showing no issues, the plaintiff would agree to stop going to the health care unit with his complaints of gastro-intestinal complaints.

     Carter subsequently informed the plaintiff that the colonoscopy results were indeed "good" and that there was nothing wrong with the plaintiff. However, the test results had, in fact, revealed a few large-mouthed diverticula.

     The plaintiff began seeing defendant Dominguez in 2011. The plaintiff apprised Dominguez of his various health complaints, which now also included "lumps" in his eyes and runny eyes. Dominguez assured the plaintiff that he was being properly treated, then prescribed him Naproxin for arthritis.

     The plaintiff continues to this day to suffer from the many health complications he attributes to soy-related hypothyroidism. The plaintiff believes that he consumes more than the maximum 25 grams of soy recommended by the Food and Drug Administration.

**Analysis**

     Accepting the plaintiff's allegations as true, the court concludes that his complaint states viable Eighth Amendment claims only against defendants Dominguez, Dahiya, and Eykamp. If the plaintiff can establish that

(1) prison doctors acted with deliberate indifference to his severe pain and other symptoms of degenerating health, and/or (2) prison dieticians have provided him with a diet that is injurious to his health, then he may be entitled to relief under the Civil Rights Act. The motions to dismiss are granted, however, as to all other movants.

Correctional officials and health care professionals may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of, and consciously disregard, the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In the case at bar, the plaintiff's allegations satisfy both prongs with respect to defendants Dahiya and Dominguez.

For purposes of the motion to dismiss, the court finds that the plaintiff had an objectively serious medical condition. A "serious" medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

The significant symptoms described by the plaintiff describe an arguably serious medical condition for purposes of Eighth Amendment analysis. *See, e.g., Jefferson v. Fenoglio*, No. 11 C 0489, 2012 WL 2412762, *3 (S.D. Ill. Jun. 26, 2012); *but see Baker v. Szoke*, No. 08 C 0346, 2010 WL 4457344, *4 (S.D. Ill. Nov. 1, 2010) ("it is doubtful that ... Plaintiff's thyroid condition ... constituted a serious medical need"). Whether or not the plaintiff actually suffers from hypothyroidism (his treating physicians evidently believe that he does not), the many ill effects he claims to be suffering (pain, numbness, vertigo, unexplained hair loss and abnormal fingernail development, extreme fatigue, chronic constipation, etc.) tend to suggest some kind of a serious medical problem. The plaintiff's condition therefore meets the objective standard, at least at the pleading stage.

To satisfy the subjective component, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011) (Kocoras, J.). The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Roe*, 631 F.3d at 857; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Here, the plaintiff has very nearly pled himself out of court. He specifically states in his complaint and his grievances that he has undergone a "battery" of tests, including no fewer than fifteen x-rays, six blood tests, five urinalyses, multiple thyroid performance tests, an ultrasound, and a colonoscopy at an outside hospital. The voluminous exhibits the plaintiff has presented strongly suggest that he has received comprehensive medical care. It would appear that, despite their best efforts, the medical staff at Dixon is simply unable to determine precisely what ails the plaintiff. It must be emphasized that an inability to effect a final cure does not necessarily support a finding of deliberate indifference. *See Lieberman v. Budz*, No. 00 C 5662, 2010 WL 3522998, *1 (N.D. Ill. Sep. 2, 2010) (Coar, J.) (citing *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996)). Even if the doctors are mistaken in their apparent belief that the plaintiff is malingering, that medical assessment is entitled to deference.

Furthermore, the defendants' refusal to authorize a soy-free diet is not actionable under 42 U.S.C. § 1983. Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v.*

*Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Estelle*, 429 U.S. at 106; *Greeno*, 414 F.3d at 653. The plaintiff's treating physicians do not think that over-consumption of soy is responsible for his supposed health problems. The plaintiff cannot challenge their determination by way of a civil rights action. With these general considerations in mind, the court will examine the potential liability of each named defendant:

**1. Bessie Dominguez, M.D.**

Dominguez' motion to dismiss is denied. The plaintiff maintains that Dominguez failed to address his intestinal problems, treating him instead for arthritis even though none of his symptoms supported a diagnosis of arthritis. Dominguez must explain her decision to provide treatment for arthritis. It is unclear from the undeveloped record whether Dominguez' approach was so off the mark as to implicate the Constitution.

**2. Rajender Dahiya, M.D.**

The complaint also states a plausible claim against defendant Dahiya. According to the plaintiff, Dahiya: (1) in response to the plaintiff's complaints of shoulder pain and numbness, merely told him to refrain from lifting weights when the plaintiff was not weight-lifting; (2) prescribed the plaintiff blood pressure medication, without regard to his symptoms and without assessing whether he actually had high blood pressure; and (3) prescribed the plaintiff asthma medication, again without conducting any tests to determine whether the plaintiff had asthma. The plaintiff's allegations, if true, tend to suggest the "blatantly inappropriate" proscribed by *Greeno, supra*, 414 F.3d at 654. The plaintiff may proceed against Dahiya. [The parties have not raised the issue of timeliness of the plaintiff's claims against Dahiya.]

**3. Ava Colgan-Valdez, P.A.**

The plaintiff has alleged no wrongdoing on the part of defendant Colgan. The plaintiff states that Colgan was responsive to all of his concerns, administering tests and treatment every time the plaintiff sought medical assistance. The complaint does not support an inference that Colgan acted with deliberate indifference, even if Colgan once erroneously informed the plaintiff that he did not have hypothyroidism. Furthermore, no allegations in the complaint concerning Colgan post-date 2009. In Illinois, the statute of limitations for Section 1983 actions is two years. *See, e.g., Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Accordingly, Colgan is dismissed as a defendant pursuant to Fed. R. Civ. P. 12(b)(6).

**4. Wexford Health Sources, Inc.**

Even assuming that certain health care providers rendered deficient care, the court discerns no basis for liability on the part of Wexford Health Sources, Inc., itself. The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). "A 'private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.'" *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002) (quoting *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)).

In analyzing a section 1983 claim against a private corporation, the court uses the same principles that would be applied in examining claims against a municipality. *Brown v. Ghosh*, No. 09 C 2542, 2010 WL 3893939, *8 (N.D. Ill. Sep. 28, 2010) (Feinerman, J.), citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). An inmate bringing a claim against a corporate entity for a violation of his constitutional rights must show that the corporation supports a "policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Brown*, 2010 WL 3893939, at *8, quoting *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (in turn quoting *Estate of Novack ex rel. v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)). Because liability is not premised upon the theory of vicarious liability, the corporate policy "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Ibid.* In the case at bar, the plaintiff has alleged no facts whatsoever that suggest an inadequate treatment "policy" on the part of Wexford.

Furthermore, supervisory officials are generally shielded from liability where, as here, a plaintiff is receiving ongoing care from health care professionals. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from

liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act where officials allegedly denied an inmate life-sustaining medication and food). "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Even though the plaintiff was dissatisfied with his medical care, his own complaint reflects that he was receiving ample [even if unsatisfactory] treatment. Wexford may properly rely on the health care staff to assess the plaintiff's needs and to provide appropriate care and treatment. The complaint is dismissed as to Wexford Health Sources, Inc.

### 5, 6. Grievance Officials Chris Barnhardt and Jackie Miller

Grievance investigator Chris Barnhardt and ARB chairperson Jackie Miller are dismissed as defendants. Illinois' statutory grievance procedures do not create a protected interest. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Walton v. Illinois Dept. of Corrections*, No. 12 C 9220, 2012 WL 6755093, *3 (N.D. Ill. Dec. 28, 2012) (Coleman, J.). Any right to a grievance is a procedural one, not substantive. *Id.* Therefore, grievance officials' failure to rule favorably on the plaintiff's grievances is not actionable under Section 1983.

### 7, 8, 9. Warden Nedra Chandler, IDOC Director Michael Randle, Administrator Amber Allen

The plaintiff has not stated a cause of action against Warden Nedra Chandler, former IDOC Director Michael Randle, or Health Care Unit Administrator Amber Allen. As discussed *supra*, Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Under the circumstances of this case, the court discerns no basis for liability on the part of supervisory officials who had no personal involvement either in the provision of medical care or in the planning of the plaintiff's diet. Consequently, Chandler, Randle, and Allen are dismissed as defendants in this matter.

### 10. Dietician Cindy Eykamp

Finally, the plaintiff will be given the opportunity to further develop his claim against Stateville's "Head of Dietary," Cindy Eykamp. The Constitution requires correctional officials to house the plaintiff under "humane conditions" and to provide him with adequate food, among other staples. *Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, *2 (N.D. Ill. Mar. 3, 2006) (Conlon, J.) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999)). There is no question that inmates have a constitutional right to an adequate diet. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). "The State must provide an inmate with a 'healthy, habitable environment.' This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citations omitted); *accord, Horton v. Sheriff of Cook County*, No. 11 C 6064, 2012 WL 5838183, *1 (N.D. Ill. Nov. 16, 2012) (Nordberg, J.). Defendant Eykamp must respond to the plaintiff's charge that she is providing him with a diet that is so soy-laden as to be injurious to his health. [The court notes that the U.S. Marshal filed an unexecuted return of service (document no. 50) as to defendant "Food Dietary Administrator." Eykamp and the Food Dietary Administrator are presumably one and the same person.]

For the foregoing reasons, the defendants' motions for judgment on the pleadings are denied. The defendants' motions for summary judgment on exhaustion grounds are granted only as to the plaintiff's claim concerning denial of treatment for diverticulum pockets. Defendants' motions to dismiss are granted as to defendants Colgan, Wexford Health Sources, Inc., Barnhardt, Chandler, Allen, Randle, and Miller; those defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The motions to dismiss defendants Dominguez,

**STATEMENT**

Dahiya, and Eykamp are denied. Those three defendants are directed to answer or otherwise plead within twenty-one days of the date of this order.

This order is not intended to discourage either party from filing a properly supported motion for summary judgment. To survive a motion for summary judgment, the plaintiff will have to come forward with competent evidence to substantiate his claims that he is ingesting an unsafe amount of soy, that the soy products have had an adverse effect on his health, and that health care providers have provided inappropriate or constitutionally deficient medical care.

Case: 3:12-cv-50130 Document #: 130 Filed: 01/10/13 Page 10 of 10 PageID #:1921